## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRENDA EDWARDS, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | Index No.: |
| v. | § § |  |
| MACY'S, INC. and DEPARTMENT STORES NATIONAL BANK, | § § § | **JURY DEMAND** |
| Defendants. | § | |

### COMPLAINT

Plaintiff, Brenda Edwards ("Edwards"), by her attorneys, alleges the following against Defendants Macy's Inc. ("Macy's"), and Department Stores National Bank ("DSNB") (together "Defendants") on behalf of herself and all others similarly situated on information and belief based on the investigation of their counsel, except as to the allegations that pertain to the named Plaintiff and her attorneys, which are alleged on personal information and belief, against Defendants Macy's Inc. ("Macy's"), and Department Stores National Bank ("DSNB") (together "Defendants") as follows:

### NATURE OF ACTION

1.      This class action arises from Defendants' deceptive, oppressive and unlawful course of conduct in marketing and/or imposing fee-based products with Macy's credit cards, known as "Credit Pro," "Account Protection," "Debt Suspension," "Accountguard," "Credit Card Protection" or other similar monikers that offer similar coverage (collectively referred to as "Payment Protection").

1

2.     Defendants marketed and/or imposed Payment Protection -- for which customers make monthly payments -- as a product akin to insurance that purports to cancel or suspend credit card payments or credit card balances in certain circumstances.   As described below, however, Defendants engage in unfair and deceptive practices with regard to Payment Protection by, among other things: (i) charging consumers without their express permission and consent ("slamming"); (ii) enrolling consumers into and charging consumers for a product with little or no value; and (iii) overcharging consumers for Payment Protection.   Specifically:

a.     **Slamming**: Defendants enroll and charge consumers in Payment Protection services absent the consumers' express affirmative request, express consent, and/or express agreement. Prior to enrolling and charging consumers, Defendants fail to disclose the material terms and conditions and cost of Payment Protection. Because consumers do not know this "coverage" has been imposed and charged, they can not avail themselves of the benefits of Payment Protection.

b.     **Unfair Enrollment in a Product of Little or No Value**: Defendants employ uniform, deceptive, and unlawful practices to enroll customers in and charge them for Payment Protection for whom the product has little or no benefit. Notably, Defendants conduct little or no inquiry to ensure consumers qualify when unilaterally enrolling them into Payment Protection resulting in ineligible consumers being enrolled and charged for the product.

c.     **Overcharging for Payment Protection**:   Defendants uniformly charge consumers a monthly fee for Payment Protection based upon their ending monthly credit card balance, irrespective of the date when customers made purchases to their account, resulting in consumers overpaying for coverage. This billing practice results in many consumers paying for a full month of coverage even though they receive less than a month -- and sometimes only a few days -- of coverage due to the date of their purchases that month or because there is a waiting period for coverage to take effect in which case the consumer is paying for nothing.

3.     Defendants knew or should have known that Payment Protection provides little or no value because many consumers: (i) were "slammed" or unaware that they had been enrolled

2

into and charged for Payment Protection, and, therefore, do not avail themselves of its purported benefits; (ii) are not even eligible for benefits at the time of enrollment; and (iii) were overcharged for coverage.

4.     For the foregoing reasons, as particularized below, Defendants have violated federal and various states' statutory and common law through the deceptive manner in which they enroll in and charge consumers for Payment Protection.   As a result, Defendants have been unjustly enriched and received millions of dollars from consumers for a largely valueless product they often do not know they are being charged for.   These deceptive and unfair practices have significantly and substantially harmed Plaintiff and putative class members.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that: (a) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; (b) this is a class action involving 100 or more class members; and (c) at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

6.     This Court has jurisdiction over Defendant Macy's because it maintains principal headquarters in New York, is actively doing business in New York, and avails itself of the markets within New York through the promotion, sale, marketing, and distribution of Payment Protection and other product services.   Venue is proper in this District of New York pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in this District and Defendant Macy's maintains its flagship store in this District.

3

## CHOICE OF LAW

7.     Defendants represent in their card member agreements that South Dakota law applies to the claims asserted in this action.   Specifically:

> **Governing Law: You understand and agree that this Agreement is entered into between you and us in South Dakota and any credit we extend to you is extended from South Dakota. You further understand and agree that this Agreement is governed only by applicable federal law and the law of the State of South Dakota, whether or not you live in South Dakota and whether or not you use your credit card in South Dakota.**

## PARTIES

8.     Plaintiff Brenda Edwards ("Edwards") is a citizen of the State of Massachusetts, residing in the city of Springfield.   Defendants charged Plaintiff Edwards for Payment Protection on her Macy's card without her request, consent and agreement.

9.     Defendant Macy's is a Delaware corporation with a principal place of business in New York, NY and Cincinnati Ohio.   Macy's is the world's largest fashion goods retailer; owns and operates approximately 838 stores throughout the U.S., and owns websites, including macysinc.com, and Macys.com which have over 3 million visitors annually where consumers shop, apply for credit cards, and receive and pay their credit card bills.   In 2013, Macy's had fiscal sales of $27.9 billion.

10.     Defendant DSNB is a subsidiary of Citibank, N.A. and has its principal place of business in Sioux Falls, South Dakota.   DSNB is a credit card issuer of retail private label accounts for Citibank's relationship with Macy's.   Citibank (South Dakota), N.A. is a non-public bank that owns 100% of the common stock of DSNB.   Macy's owns 49% of a class of non-voting preferred stock of DSNB.   Credit cards issued by DSNB for Macy's bear the marks of Macy's

store brands such as Bloomingdale's and Macy's.

## FACTUAL ALLEGATIONS

11.     Macy's customers are provided with credit cards that bear the Macy's logo upon credit approval.   The cards contain a customer service number that is answered automatically with a greeting "thank you for calling Macy's credit customer service…."

12.      Macy's credit card billing statements are sent in envelopes bearing the Macy's name and logo through a see-through window.   Billing statements are also sent *via* email to consumers, who are directed to the macys.com website to login to their Macy's account, view their Macy's billing statement, and make payments to Macy's.

13.     Macy's and Citibank have a marketing and servicing alliance under a Credit Card Program Agreement ("Credit Card Program") dated June 1, 2005.   Under the Credit Card Program, Macy's provides marketing services, credit processing, collections, and customer service related to credit card accounts and ancillary products, including Payment Protection, and receives compensation for these services.

14.     Under the Credit Card Program, the imposition and collection of Payment Protection premiums generates a portion of the $928 million (2013), $865 million (2012) and $772 million (2011) Macy's received from DSNB.

15.     The Credit Card Program identifies Defendants' ancillary Payment Protection Products, including "Debt Cancellation" and "Accountguard", as "Major Ins(urance)." Defendants present Payment Protection as a product that temporarily suspends or covers consumers' minimum monthly credit card payments or permanently cancels up to a certain dollar amount in the event of job loss, disability, or leave of absence.   Defendants charge monthly fees

for Payment Protection from 99 cents to $1.89 per $100 of customers' ending monthly balance.

16.      Defendants engage in a series of deceptive and unfair business practices in connection with Payment Protection.    In particular, Defendants enroll and charge consumers for Payment Protection services absent the consumers' express affirmative request, express consent and/or express agreement.    Defendants also fail to provide consumers with clear, conspicuous and complete disclosures regarding the material terms and conditions and cost of Payment Protection. This lack of candor and disclosure is exemplified by, among other things, Defendants' failure to provide consumers with separate invoices and receipts for the purchase of Payment Protection, and the imposition of fees directly on consumers' monthly credit card statements.

**Payment Protection With Little or No Value**

17.      Payment Protection also provides little or no value to consumers, many of whom are not even eligible for its purported benefits.    For example, Payment Protection does not apply to part-time and seasonal employees and/or to persons who are self-employed, unemployed, disabled or retired. Moreover, for these persons who are ineligible for Payment Protection benefits, Defendants fail to fully refund premiums and interest charges.

**Overcharges for Payment Protection**

18.      Defendants also impose and calculate monthly Payment Protection charges on consumers' monthly credit card balances based upon the closing date amount -- rather than the average balance -- of that month's billing cycle.    For example, if a Macy's credit card customer has a $500 ending balance with 99 cents per $100 dollar rate, that customer is charged $4.95 for that month's Payment Protection coverage.    The Payment Protection charge is uniformly based upon the balance as of the closing date of each month's billing cycle, regardless of the date on

6

which charges to the account were incurred. As a result, consumers are overcharged because they are paying for Payment Protection during periods when there is no coverage.

19.     For example, a consumer who purchases an item on the first day of the billing cycle will be charged the exact same Payment Protection fee amount as the consumer who charged the exact same item at the exact same amount on the last date of the billing cycle.   Both consumers pay the same amount even though one consumer had a month of coverage and the other only one day of coverage.   Defendants' Payment Protection billing practices have caused substantial and significant harm to Plaintiff and similarly situated consumers.

## PLAINTIFF BRENDA EDWARDS

20.     Years ago, Ms. Edwards opened a Macy's credit card at a local Macy's department store.   Sometime in or before January 2011 and without her express affirmative request, consent and/or agreement and sometime before 2011, Defendants enrolled Ms. Edwards into and charged her for Payment Protection.   In fact, for approximately the last 30 years, Ms. Edwards has been self-employed, and, therefore, ineligible for benefits under Defendants' Payment Protection program.

21.     In or about April 2014, Ms. Edwards, while reviewing old credit card statements, noticed unknown, unauthorized charges to her Macy's account.   She promptly called Macy's customer service and questioned and complained about unauthorized fees for "Credit Pro" on her billing statements.   The customer service representative replied that Ms. Edwards had enrolled into the "Payment Protection" plan, which would help her pay her Macy's bill if she was out of work.

22.     Ms. Edwards denied she enrolled into the "Payment Protection" plan and disputed that she authorized the charges.   She also requested cancellation and a refund of all of the "Credit Pro" charges imposed on her Macy's credit card.   The customer service representative informed Ms. Edwards that her account would be credited and that "Credit Pro" would be cancelled the following month.

23.     On May 19, 2014, a $17.12 credit appeared on Ms. Edwards' Macy's credit card statement for the period ending June 17, 2014, presumably a refund for only the past three months of "Credit Pro" fees.   To date, Ms. Edwards received no other refund for any of the other Macy's "Credit Pro" charges.

24.     Since January 2011, Defendants charged Ms. Edwards as much as $1.89 per $100 of her monthly ending statement balance, irrespective of the dates on which she made purchases within the billing cycle.   In total, since January 2011, Ms. Edwards paid more than $250.00 in unauthorized premiums for a service she never requested and for which she was ineligible. Defendants also charged Ms. Edwards an interest rate of 24.5% on balances that include the bogus premiums paid to Defendants.

25.     Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment of the facts alleged herein.   Defendants' knowingly concealed from Plaintiff and other consumers vital information regarding Payment Protection.   Among other things, the terms and conditions of the product do not appear on Macy's or DSNB's websites.   These terms and conditions are essential to the pursuit of claims, and, as such, Plaintiff and other Macy's consumers could not reasonably have discovered the true nature of Payment Protection.

26.     Moreover, Defendants are under a continuing duty to disclose to their customers the true character, nature and cost of Payment Protection.   Because of their knowing, affirmative, and active concealment of these facts, Defendants are estopped from relying on any statutes of limitation in their defense of this action.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action on her own behalf and on behalf of a Class of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages and refunds for Defendants' violations of South Dakota common law and consumer protection laws as well as other states similar consumer protection laws, and for injunctive relief, declaratory judgment, and restitution.

28.     Plaintiff seeks certification of nationwide class ("Class A") consisting of all persons residing in the United States who were charged by Defendants and paid for Payment Protection.

29.     Plaintiff also seeks certification of the following subclasses (collectively, the "Subclasses"): (a) Sub-Class A1, which consists of all members of Class A who were enrolled in and charged for Payment Protection services absent the consumers' express affirmative request, consent and/or agreement; and (b) Sub-Class A2, which consists of all members of Class A who were charged for Payment Protection but were ineligible for such coverage.   Excluded from Class A and the Subclasses are:

a.   Defendants and any entities in which Defendants have a controlling interest;

b.   Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendants;

c.   The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.   All persons or entities that properly execute and timely file a request for exclusion from Class A and/or Subclasses;

e.   Any attorneys representing the Plaintiff or Class A and/or Subclasses; and

f.   All governmental entities.

30.   The Class and the Subclasses (collectively, unless otherwise indicated, the "Classes") meet all the requirements for certification under Federal Rule 23.   Specifically:

31.   Numerosity: Fed. R. Civ. P. 23(a)(1). The Classes are comprised of thousands of consumers, the joinder of whom in one action would be impracticable.   The exact number or identification of the members of the Classes is presently unknown.   The identity and number of the members of the Classes are ascertainable and can be easily determined based on Defendants' records.

32.     <u>Commonality and Predominance</u>: Fed. R. Civ. P. 23(a)(2), 23(b)(3).   Common questions of fact and law that are capable of class-wide resolution exist as to the Classes and predominate over questions affecting only individual members. The answers to these common questions will advance this litigation significantly.   Common questions capable of generating common answers apt to drive the resolution of the litigation include, but are not limited to, the following:

a.     Whether Defendants' enrollment and charging for Payment Protection services for individuals who did not expressly request, expressly consent, and/or expressly agree to it is unlawful, oppressive, deceptive, and/or unfair.

b.     Whether Defendants' enrollment and charging for Payment Protection for individuals who were ineligible for Payment Protection benefits as alleged in this Complaint is unlawful, oppressive, deceptive, and/or unfair and in violation of common law.

c.     Whether Defendants' enrollment and charging ineligible persons for Payment Protection while such persons would be subject to a *per-se* exclusion for benefits under the contract renders the contract illusory due to the illusory nature of the Defendants' consideration for the contract.

d.     Whether Defendants' enrollment and charging ineligible persons for Payment Protection while such persons would be subject to a *per-se* exclusion for benefits under the contract is a breach contract in that it breaches the duty of good faith and fair dealing and duty to disclose all relevant information during contract formation.

e.     Whether Defendants' enrollment and charging ineligible persons for Payment Protection constitutes unjust enrichment in that the contract for Payment Protection was illusory or failed as to consideration.

f.     Whether Defendants' enrollment and charging ineligible persons for Payment Protection while such persons would be subject to a *per-se* exclusion for benefits under the contract constitutes a breach contract in that such terms are one-sided and/or overly harsh as they deprive subscribers, including Plaintiff, of all value under the contract, and thus are unenforceable.

g.     Whether Defendants overcharged for Payment Protection where the monthly fee was based upon the balance as of the last day of the billing cycle and as

11

such charged for the full month of coverage when in fact there was no coverage or under coverage.

h.      Whether Defendants breached their duty to disclose relevant information about their charging fees for Payment Protection based upon the balance as of the last day of the billing cycle and not based upon the average balance for that billing cycle constitutes a violation of the parties' general obligation to deal in good faith and thus a breach of contract.

i.      Whether Defendants' charging fees for Payment Protection based upon the balance as of the last day of the billing cycle and not based upon the average balance for that billing cycle is unconscionable and thus unenforceable.

j.      Whether Defendants' conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained or retained funds, restitution to, or other remedies for the benefit of the Classes.

k.      Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

33.     <u>Typicality:</u> Fed. R. Civ. P. 23(a)(3). Plaintiff asserts claims that are typical of the entire Class, in that Plaintiff paid for Payment Protection and is also a member of the Sub-Classes in that she never expressly requested, consented, and/or agreed to being enrolled and she was ineligible for benefits as she was be subject to a *per-se* exclusion for benefits.

34.     <u>Adequacy:</u> Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiff is an adequate representative of the Classes because she fits within the Classes; her interests do not conflict with the interests of the members of the Classes she seeks to represent; and she is represented by experienced counsel who have litigated numerous class actions and intend to prosecute this action vigorously.

35.     Superiority: Fed. R. Civ. P. 23(b)(3). A class action is the best available method for the efficient adjudication of this litigation because: (a) it would be impracticable for each member to prosecute individual litigation due to the size of the claims at issue; (b) individual litigation of thousands of such claims would be unduly burdensome to the courts; (c) the size of individual class members' claims prevents class members from seeking legal redress for the wrongs identified in this Complaint; and (d) individual litigation has the potential to result in inconsistent or contradictory judgments. Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses as Defendants continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint.

36.     Issue Certification and/or Subclasses: Fed. R. Civ. P. 23(b)(1),(b)(2), (c)(4), and (c)(5). If on the motion of a party and/or in the discretion of the Court, one or more of the issues or claims set forth in this Complaint may be certified under the provisions of Fed. R. Civ. P. 23 (b)(1),(b)(2), and/or (c)(4), and subclasses designated under Fed. R. Civ. P. 23(c)(5).

## COUNT ONE
## VIOLATION OF THE SOUTH DAKOTA
## CONSUMER DECEPTIVE TRADE PRACTICES ACT
## S.D. CODIFIED LAWS ANN. §37-24-1 ET SEQ.

37.     Plaintiff restates and re-alleges the preceding paragraphs 1-37 of the Complaint as though set out here word for word.

38.     Each Defendant is a "person" as defined by S.D. Codified Laws § 37-24-1(8).

39.     Payment Protection is "merchandise" and/or "goods or services," within the meaning of S.D. Codified Laws § 37-24-1(6), (7).

40.     South Dakota's Consumer Fraud Act provides in relevant part that:

It is a deceptive act or practice for any person to:

13

(1) Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby;

*** 

(6) Send, deliver, provide, mail, or cause to be sent, delivered, provided, or mailed any bill or invoice for unordered property or unordered service provided;
S.D. Codified Laws § 37-24-6 (2014).

41.     Defendants violated the South Dakota Consumer Fraud Act's proscription by knowingly acting, using, or employing deceptive acts, or practices, fraud, false pretense, false promise, misrepresentation, and/or the concealment, suppression, or omission of any material fact in connection with the sale of merchandise, *i.e.*, Payment Protection, by, *inter alia*, (a) deceptively enrolling and charging Plaintiff and the members of the Subclasses for Payment Protection; and (b) affirmatively concealing, suppressing or omitting material facts about the terms and conditions and cost of Payment Protection.

42.     Defendants violated the South Dakota Consumer Fraud Act's proscription by sending, delivering, providing, mailing, or causing to be sent, delivered, provided, or mailed any bill or invoice for unordered service provided, by sending, delivering, mailing, or causing to be sent, delivered, and mailed credit card statements to customers with Payment Protection service charges for the plan into which they had not voluntarily enrolled and/or were ineligible for, and/or were overcharged.

14

43.     Defendants' Payment Protection occurred in the conduct of trade or commerce under the South Dakota Consumer Fraud Act as: (a) at least some of the deceiving conduct that violates S.D. Codified Laws § 37-24-6 originated, arose, was directed, and emanated from South Dakota, and/or (b) the presence of Defendants in South Dakota is sufficient grounds for the South Dakota Consumer Fraud Act to apply.

44.     As a direct and proximate result of Defendants' misconduct, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

45.     In addition to compensatory damages, Plaintiff and members of the Classes are entitled to punitive damages because Defendants' conduct was fraudulent, gross, oppressive, and/or reckless, in an amount to be proven at trial.

46.     Plaintiff asks the Court to grant the remedy of restitution to herself and to all Class members who were charged for Payment Protection.

47.     Plaintiff asks the Court to grant the following relief: (a) damages in the amount of all Payment Protection payments made to Defendants; (b) a full refund to any consumer who was otherwise not eligible for Payment Protection benefits due to the restrictions in the coverage at the time the product was sold to the consumer and who was charged for the product; and (c) a full refund to any consumer who did not consent to enrollment in and charges for Payment Protection and who was charged for the product.

48.     Plaintiff seeks injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

## COUNT TWO
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49.     Plaintiff restates and re-alleges paragraphs 1-37 of the Complaint as though set out here word for word.

50.     Defendants enrolled and charged Plaintiff and members of Class A for Payment Protection services and Defendant was obligated by contract to provide them with certain benefits. When Defendants contracted to provide Payment Protection services to Plaintiff and Class A, Defendants promised to act in good faith and fairly charge for the product; instead, Defendants unfairly overcharged for the product.  When Defendants sought to contract with and charged Plaintiff and members of Sub-Class A1 for Payment Protection services they did so unfairly by enrolling and charging them without their consent.

51.     When Defendants sought to contract with and charged Plaintiff and members of Sub-Class A1 for Payment Protection services they did so unfairly by enrolling and charging them without their consent.

52.     When Defendants sought to contract with and charged Plaintiff and members of Sub-Class A2 for Payment Protection services they did so by charging ineligible consumers.

53.     Defendants contracted to provide Payment Protection services to Plaintiff and members of the Classes.  In exchange for the benefits Defendants contractually promised, Defendants charged Plaintiff and members of the Classes monthly fees.

54.     A covenant of good faith and fair dealing is implied in every contract.   The concepts of general duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.   Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.   Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit -- not merely the letter -- of the bargain.

55.     Evading the spirit of the bargain in a contract and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.   Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.   An example of bad faith is the evasion of the spirit of the bargain.

56.     Defendants have breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

57.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

58.     Plaintiff and members of the Classes have sustained damages as a result of Defendants' breaches of the covenant of good faith and fair dealing.

59.     Plaintiff asks the Court to grant the following relief: (a) a refund of all Payment Protection payments to any consumer who was self-employed at the time they were sold Payment Protection by Defendants; (b) a refund of all Payment Protection payments to any consumer who was not eligible for Payment Protection benefits due to the restrictions in the coverage at the time the product was sold to the consumer and who paid for the product; (c) a refund of all Payment Protection payments to any consumer who was enrolled in and charged for Payment Protection without their express consent; and (d) any other relief the Court deem appropriate under the facts alleged.

60.     Plaintiff seeks injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein.

## COUNT THREE
## UNJUST ENRICHMENT

61.     Plaintiff restates and re-alleges paragraphs 1-37 of the Complaint as though set out here word for word.

62.     At the time Defendants enrolled and charged Plaintiff and members of the Classes for Payment Protection, Defendants did not disclose the material terms and conditions and cost for such program.   Defendants also enrolled and charged Plaintiff and members of the Classes for Payment Protection without their express affirmative request, consent and/or agreement.   As a result, even assuming consumers were or could become eligible to receive benefits under the program, they would never likely file claims due to the fact that Defendants failed to meaningfully apprise class members of the program.   Moreover, ineligible consumers who attempted to make claims would have their claims denied through Defendant's post-claims underwriting process.

18

63.    Also, because there was no meeting of the minds and no contract was formed, Defendants charged Plaintiff and members of the Classes fees for the purported coverage.

64.    Defendants were unjustly enriched by their business practices as a result of unconscionable conduct by enrolling and charging fees for the Payment Protection services when class members never expressly requested or consented to the service; were ineligible for benefits of the service; or by charging for full months of service for which consumers only had a portion of the month of coverage.

65.    Plaintiff asks the Court to grant the following relief: (a) a refund of all Payment Protection payments made to Defendants by members of the Classes; and (b) any other relief the Court deem appropriate under the facts alleged.

## COUNT FOUR
## PAYMENT PROTECTION RESCISSION

66.    Plaintiff restates and re-alleges paragraphs 1-37 of the Complaint as though set out here word for word.

67.    Defendants enrolled Plaintiff and the Classes for Payment Protection services and Defendants were obligated by contract to provide them with certain benefits.

68.    At the time DSNB contracted to provide Payment Protection services to the Plaintiff and the Classes, it promised to confer benefits to Plaintiff and the Classes.

69.    In exchange for the benefits DSNB promised, DSNB charged Plaintiff and the Classes fees.

70.    Plaintiff asks the Court to grant the remedy of contract rescission to Plaintiff and to all members of the Classes who made payments for Payment Protection.

19

71.     Plaintiff asks the Court to grant herself and the Classes a refund of all Payment Protection payments made to Defendants.

72.     Plaintiff seeks equitable relief of contract rescission, eliminating her and the Classes of the obligation to pay premiums under the Payment Protection contract.

73.     Plaintiff asks the Court to grant the following relief:

    a.   a refund of all Payment Protection payments from Classes made to Defendants;

    b.   Any other relief the Court deem appropriate under the facts alleged.

74.     Plaintiff restates and re-alleges paragraphs 1-37 of the Complaint as though set out here word for word.

75.     There exists an actual controversy under applicable law governing Defendants' conduct as to whether Defendants can engage in the practices described herein.   This question is common to Plaintiff and members of the Classes who seek a declaration of their rights and legal obligations in addition to such other relief which might be granted by this Court.

76.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

77.     Plaintiff and members of the Classes are interested parties who seek a declaration of their rights and legal relations vis-à-vis Defendants under the Payment Protection plan, including a finding that the conduct of Defendants alleged herein is in violation of federal and various states' statutory and common law, and enjoining Defendants from continuing in such conduct.

## GENERAL PRAYER FOR RELIEF APPLICABLE TO ALL COUNTS

**WHEREFORE**, Plaintiff prays:

a. That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that the Plaintiff is a proper class representative for the Classes she seeks to represent, and her counsel are adequate class counsel;

b. That judgment be entered against Defendants and in favor of Plaintiff and the Classes for relief in this Complaint, for injunctive and equitable relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

c. That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against Defendants as applicable to the individual counts;

d. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

e. For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 29, 2014

By their attorneys,

Lee S. Shalov (LS-7118)
McLAUGHLIN & STERN LLP
260 Madison Ave.
New York, NY 10016
Tel: (646) 278-4298
Cell: (516) 359-1825
Fax: (212) 448-0066

Angela M. Edwards, Esquire
Law Office of Angela Edwards
72 Canterbury Circle
East Longmeadow, Massachusetts 01028
Tel: (413) 525-3820
Fax: (413) 525-3820
angelaedwards@charter.net

Lance A. Raphael, Esq.
Stacy Bardo
THE CONSUMER ADVOCACY CENTER
180 West Washington Street, Suite 700
Chicago, Illinois 60602
(312) 782-5808
Lance@caclawyers.com

Aron Robinson
Law Office of Aron D. Robinson
180 W. Washington St. Suite 700
Chicago, IL 60602
312 857-9050
Adroblaw@aol.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating her.   These materials are likely very relevant to the litigation of this claim.   If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials.   This demand shall not narrow the scope of any independent document preservation duties of the Defendants.